IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARCUS BERNEL KELLY, | ) | |
| Movant, | ) | |
| | ) | Cv. No. 1:15-cv-01276-JDB-egb |
| v. | ) | Cr. No. 1:11-cr-10009-JDB |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion") filed by Movant, Marcus Bernel Kelly, Bureau of Prisons register number 24599-076, an inmate at the United States Penitentiary in Beaumont, Texas. (Mot., ECF No. 1.) For the reasons stated below, the Motion is DENIED.

**I.      PROCEDURAL HISTORY**

**A.      Criminal Case Number 1:11-cr-10009**

On February 22, 2011, a federal grand jury returned a single-count indictment charging Kelly, a convicted felon, with possessing a Kel-Tec, .380 caliber pistol on or about July 1, 2010, in violation of 18 U.S.C. §§ 922(g) and 924(a) and (e). (Indictment, ECF No. 1 (sealed).) The factual basis for these charges is stated in the presentence report ("PSR"):

> 6.      Shortly after midnight on July 1, 2010, Kelly's ex-wife, LaShawn Kelly, met with Dyersburg (TN) Police Department and Dyer County Sheriff's Office officers at Dyersburg Police Department headquarters. Lashawn Kelly

reported that Kelly, while heavily intoxicated, came to her home at approximately 10:30 p.m. on June 30, 2010, and accused her of having relations with other men. LaShawn Kelly reported that Kelly pointed a loaded, black, .38 caliber handgun at her and threatened, "If you ever talk to another man or anyone else, I will shoot you in the face," and, "If you tell anyone what happened here tonight, I will kill you." LaShawn Kelly said that Kelly made her leave her cell phone at home and then drive him to a local convenience store in order to purchase beer. LaShawn Kelly said that, upon arriving at the convenience store, Kelly exited the vehicle and entered the store. At that time, LaShawn Kelly got away from Kelly by driving off, leaving Kelly at the convenience store. She proceeded directly to the Dyersburg Police Department, where the report was filed. LaShawn Kelly advised that she was worried about the safety of her three (3) children. She gave a physical description of Kelly and advised that he was still in possession of the aforementioned handgun. Officers verified that Kelly was already under a no violent contact order in regard to LaShawn Kelly as a result of a September 15, 2009, Dyersburg City Court conviction for Simple Domestic Assault. At that time, Deputy Wells and Lt. Simpson of the Dyer County Sheriff's Office left the Dyersburg Police Department to look for Kelly.

      7.    At 1:45 a.m. on July 1, 2010, Lt. Simpson located Kelly walking south on Highway 51 By-Pass. Lt. Simpson pulled up behind Kelly and activated his emergency lights. At that time, Lt. Simpson saw Kelly move his hands to the front of his pants. Believing that Kelly was reaching for a gun, Lt. Simpson drew his weapon while exiting his patrol car and instructed Kelly to stop. Lt. Simpson saw Kelly drop a black object, originally believed to be a pistol clip, on the ground in front of him. Lt. Simpson ordered Kelly to keep his hands in the air while walking back towards him. Lt. Simpson then had Kelly to lie prone on the ground until a back-up officer arrived on the scene. Upon arrival, the back-up officer, Deputy Sammy Bell, retrieved the black object that Lt. Simpson had seen Kelly drop. The object was positively identified as a Keltec, model P3AT, .380 caliber, semi-automatic pistol, loaded with four (4) .380 caliber rounds. The gun was secured as evidence. Kelly was handcuffed and transported to the Dyer County Jail.

    . . . .

      11.    On August 9, 2010, Kelly was indicted by a Dyer County (TN) grand jury on charges of Aggravated Assault, Especially Aggravated Kidnapping, and Felon in Possession of a Handgun (Dyer Cty. Cir. Court; Case No. 10-CR-232). During preparation of the presentence report, this probation officer spoke by phone with Dyer County Sheriff's Department Lt. Simpson and Deputy Wells. Both Lt. Simpson and Deputy Wells reported that Kelly's ex-wife, LaShawn Kelly, was not willing to and did not cooperate with case investigators in the investigation and prosecution of the related state indictment. On August 9, 2011, the Dyer County Circuit Court entered an Order of *Nolle Prosequi* in regard to all charges of the related state indictment. Counsel for the government in the current

federal matter advised that, to this point, LaShawn Kelly has not been willing to cooperate with case investigators or the government in the investigation of the instant federal case.

(PSR ¶¶ 6-7, 11.) Officers verified that Kelly was prohibited from possessing a handgun because of his prior felony convictions and his prior conviction for misdemeanor domestic assault. (*Id.* ¶¶ 8-9.) It was later determined that the firearm was not manufactured in Tennessee. (*Id.* ¶ 10.)

A jury trial commenced on February 25, 2013. (Min. Entry, ECF No. 82; 02/25/2013 Trial Tr., ECF No. 122.) On February 26, 2013, the jury returned a guilty verdict. (Min. Entry, ECF No. 85; 02/26/2013 Trial Tr., ECF No. 123; Jury Verdict, ECF No. 87.) At a hearing on November 18, 2013, the Court sentenced Kelly to a term of imprisonment of one hundred months, to be followed by a two-year period of supervised release. (Min. Entry, ECF No. 113; Sentencing Hr'g Tr., ECF No. 124.)[1] Judgment was entered on November 19, 2013. (J. in a Criminal Case, ECF No. 115 (sealed).) The Sixth Circuit Court of Appeals affirmed. *United States v. Kelly*, No. 13-6566, slip op. (6th Cir. Dec. 18, 2014), *cert. denied*, 135 S. Ct. 1874 (2015).

---

[1]The 2012 edition of the *Guidelines Manual* was used to compute Kelly's sentence. (PSR ¶ 15.) Pursuant to § 2K2.1(a)(4)(A) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of a firearm is twenty if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. However, because Kelly possessed the firearm in connection with another offense, the Court applied the offense level for the other offense plus any adjustments for that offense. U.S.S.G. §§ 2K2.1(c), 2X1.1(a). The base offense level for kidnapping is thirty-two. *Id.* § 2A4.1(a). Kelly received a two-level enhancement for use of a firearm, *id.* § 2A4.1(b)(3), resulting in a total offense level of thirty-four. Given his criminal history category of VI, the guideline sentencing range was 262-327 months. The statutory maximum sentence was 120 months.

### B. Civil Case Number 1:15-cv-01276

On November 10, 2015, Kelly filed his *pro se* Motion, accompanied by a legal memorandum. (Mot., ECF No. 1; Mem. of Law in Supp. of Mot., ECF No. 1-1.) The Motion presents the following issues:

1. "Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure and/or unlawful arrest (4th Amendment)" (Mot. at PageID 4, ECF No. 1; *see also* Mem. of Law in Supp. of Mot. at 4-6, ECF No. 1-1);

2. "I never faced my accuser and/or ineffective assistance of counsel which is a 6th Amendment right violation" (Mot. at PageID 6, ECF No. 1; *see also* Mem. of Law in Supp. of Mot. at 7-8, ECF No. 1-1);

3. "A defective or inaccurate reasonable doubt jury instruction. This is a structural error, therefore reversible" (Mot. at PageID 7, ECF No. 1); *see also* Mem. of Law in Supp. of Mot. at 8-10, ECF No. 1-1); and

4. "I challenge my sentence for Constitution vs. Statutory error A 6th Amendment violation" (Mot. at PageID 8, ECF No. 1; *see also* Mem. of Law in Supp. of Mot. at 10-13, ECF No. 1-1).

Kelly's legal memorandum includes a section titled "A CLOSING DIATRIBE," which presents number of additional issues, namely:

5. The motion for judgment of acquittal should have been granted (Mem. of Law in Supp. of Mot. at 13-14, ECF No. 1-1);

6. The indictment was defective (*id.* at 14);

7. There was structural error in the case, including (a) the denial of counsel at a critical stage; (b) this judge's actual bias; (c) denial of the right to self-representation; and (d) a defective reasonable doubt instruction (*id.*); and

8. There was a lack of subject-matter jurisdiction because the Government lacked standing to prosecute Kelly (*id.* at 15).

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668 [] (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99

(6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion[.]" Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### III. ANALYSIS OF MOVANT'S CLAIMS

#### A. The Alleged Fourth Amendment Violation (Claim 1)

In Claim 1, Kelly argues that his conviction was obtained pursuant to an unlawful search and seizure and/or an unlawful arrest, in violation of the Sixth Amendment. (Mot. at PageID 4, ECF No. 1.) The factual basis for this issue is the following:

> I was arrested on 7-1-10 by Lieutenant Simpson at gun point. Simpson didn't have a warrant or a complaint or even firsthand knowledge of a complaint against me. This is a 4th Amendment Right violation that makes any evidence deriving from the unlawful arrest inadmissible in a Court of law. Simpson did not have probable cause. The gun as well as the video of the arrest in [sic] inadmissible [sic][.] The Transcript of my Suppression hearing on 11-27-12 as well as the presentence investigation report will show that Lt. Simpson did as I said and that officers Wells and Bell were the officers with probable cause.

(*Id.* at PageID 4-5.) Kelly claims that his appellate counsel rendered ineffective assistance in the manner in which he presented the issue on direct appeal, although it is not clear what he claims his lawyer should have done. (*Id.* at PageID 5.)[2]

Movant's trial counsel filed motions to suppress and to dismiss the indictment on the ground that his arrest violated the Fourth Amendment. (Mot. to Suppress, Case No. 1:11-cr-10009, ECF No. 61; Mot. to Dismiss Indictment, ECF No. 62.) After an evidentiary hearing, the Court denied the motions on the record. (Min. Entry, ECF No. 68; Suppression Hr'g Tr., ECF No. 81; Order, ECF No. 70.) The Court held that Kelly lacked standing to seek the suppression of the firearm because he had abandoned it and because he claimed that it did not belong to him. (Suppression Hr'g Tr. 25-27, 100, ECF No. 81.) The Court further held that the arresting officer had sufficient information to conduct an investigative stop and, subsequently, to arrest Kelly. (*Id.* at 100-02.) The Court also observed that, even if the Movant were correct that there was not

---

[2] The Motion states that "my lawyer raise [sic] the issue of the Court error in denying my Motion to Suppress and used the 4th Amendment argument. I told him to raise the 4th Amendment but he did not." (Mot. at PageID 5, ECF No. 1.)

probable cause to arrest him shortly after the incident at issue, the fact that he was subsequently indicted by a grand jury provided probable cause for his arrest. Under those circumstances, it is questionable whether dismissal of the indictment would be warranted. (*Id.* at 102-03.)

On direct appeal, Kelly's appellate counsel argued that the Court erred in denying the motion to suppress because he was arrested without probable cause "and therefore, all evidence flowing from the point of arrest, was fruit of the poisonous tree." (Br. of Appellant Kelly at 19, *United States v. Kelly*, No. 13-6566 (6th Cir.), ECF No. 22; *see also id.* at 19-22.) Counsel explicitly argued that the Movant was arrested in violation of the Fourth Amendment and that all evidence derived from that arrest must be suppressed. The Sixth Circuit denied relief, holding that, "because Kelly had abandoned the firearm and was disclaiming any possessory interest in it, he could not raise a Fourth Amendment challenge to its admission." (*United States v. Kelly*, No. 13-6566, slip op. at 3.) Although the Court of Appeals did not explicitly address the false arrest issue, it implicitly rejected that argument by denying relief.

The inmate cannot relitigate his Fourth Amendment false arrest claim because it was decided by the Sixth Circuit on direct appeal. Any claim of ineffective assistance of appellate counsel is meritless because the Motion does not present the argument Kelly contends his attorney should have made and does not demonstrate that, if only counsel had properly briefed the issue, there is a reasonable probability the decision on direct appeal would have been different.

Claim 1 is without merit and is DISMISSED.

### B. The Alleged Confrontation Clause Violation (Claim 2)

In Claim 2, Kelly argues that "I never faced my accuser and/or ineffective Assistance of Counsel which is a 6th Amendment Right violation." (Mot. at PageID 6, ECF No. 1.) He elaborates:

> Paragraph 6 and 12 of the Presentence Investigation Report show that my ex-wife LaShawn Kelly is clearly my accuser, yet she never came to Court even after she was subpoena [sic] by the Government and the defense. Lieutenant Simpson admitted in my trial that he didn't see me with a gun. And because Simpson was under oath and lied, he can't be a reliable witness. As well as the fact that he did not witness anything. Judgment and Acquittal should have been granted in this case.

(*Id.* (record citations omitted).) He argues that his appellate counsel rendered ineffective assistance in failing to include the issue in his brief. (*Id.*)

Most of the information in Paragraph 6 of the PSR, which describes Kelly's encounter with LaShawn Kelly and her subsequent police report, was not introduced at trial. In response to a defense objection, the Court limited the testimony the Government was allowed to elicit about Ms. Kelly's complaint to the police. (02/25/2013 Trial Tr. 28-38, Case No. 1:11-cr-10009, ECF No. 122.) As a result, Lieutenant Simpson testified only that, while he was on patrol at 1:30 a.m., Deputy Bell called to inform him of a situation involving the Movant. Simpson related Kelly's last known location, a description of him, and that he was intoxicated and armed with a firearm. (*Id.* at 41-43.)[3]

To the extent the Movant seeks to raise a stand-alone claim about the introduction of this testimony, it is barred by procedural default because the issue could have been raised on direct appeal. Kelly's argument that the ineffective assistance of appellate counsel serves to excuse his

---

[3]Claim 2 does not encompass the fact that the Court used the guideline for kidnapping to sentence Kelly. (*See* Mem. of Law in Supp. of Mot. at 7-10, ECF No. 1-1.) At the sentencing hearing, his lawyer objected to that cross-reference because no evidence of the encounter between the inmate and his ex-wife had been presented at trial.

procedural default is meritless because he cannot show deficient performance or prejudice. In a similar case, the Sixth Circuit held there was no violation of the Confrontation Clause:

> Crome's Confrontation Clause rights were not violated by this testimony. This exchange at least arguably did not even put before the jury any statements made by the [confidential informant]. Even if testimonial statements of an out-of-court declarant were revealed by this testimony, Cromer's confrontation right was not implicated because the testimony was provided merely by way of background. The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Any out-of-court statements alluded to by O'Brien at this juncture served the purpose of explaining how certain events came to pass or why the officers took the actions they did. Because the statements were not offered to establish the truth of the matter asserted, the Confrontation Clause does not apply.

*United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) (internal footnote, citations & quotation marks omitted). Although Simpson's testimony that he believed Kelly to be armed arguably implicated him in the illegal activity at issue in this case—possession of a firearm by a convicted felon—the information was also necessary to explain Simpson's aggressive actions when he first encountered the Movant, which were captured on video.[4]

Claim 2 is without merit and is DISMISSED.

---

[4] Some of the inmate's factual allegations are either unexplained or do not appear relevant to his Confrontation Clause claim. Simpson's admission that he did not observe Kelly holding the firearm goes to the sufficiency of the evidence, which was addressed on direct appeal. The Movant's assertion that Simpson committed perjury is unexplained and appears to be irrelevant to the Confrontation Clause issue.

10

## C. The Allegedly Defective Jury Instruction on Actual and Constructive Possession (Claim 3)

In Claim 3, Kelly argues that the jury instruction on actual and constructive possession was "defective or inaccurate" and that use of that instruction constitutes structural error. (Mot. at PageID 7, ECF No. 1.)[5] The factual basis for this issue is the following:

> My Lawyer objection to the jury instruction, it's in the trial transcript. The 6th Cir. defined the jury instruction for both actual and constructive possession for the 18 U.S.C. § 922(g)(1) 2.10, 210A and 211. In both actual and constructive the jury instruction for the 6th Cir. read what actual and constructive possession is and goes on to say, "gout" [sic] being present where something is located does not equal possession. The court fail [sic] to properly notify the jury and in this case, the Court only proved that I was there at the scene.

(*Id.* (record citation omitted); *see also* Mem. of Law in Supp. of Mot. at 8-10, ECF No. 1-1.) Kelly says he asked his attorney to raise this issue on direct appeal but counsel refused, telling him that he had enough issues. (Mot. at PageID 7, ECF No. 1.) The inmate argues that the failure to raise the issue constitutes ineffective assistance of counsel. (*Id.*)

The jury was instructed that the Government must prove that the defendant knowingly possessed or received a firearm. (Jury Instructions 15, Case No. 1:11-cr-10009, ECF No. 89.) The jury was instructed that

> [t]o "possess" means to have something within a person's control. This does not necessarily mean that the defendant must hold it physically, that is, have actual possession of it. As long as the firearm is within the defendant's control, he possesses it. If you find that the defendant either had actual possession of the firearm, or that he had the power and intention to exercise control over the firearm, even though it was not in his physical possession, you may find that the government has proven possession.

(*Id.* at PageID 302.) The jury was also instructed that "[t]he word 'knowingly,' as that term is used from time to time in these instructions, means that the act was done voluntarily and

---

[5]Although the label Kelly gave to this issue suggests that he objects to the reasonable doubt instruction, the factual description and legal memorandum clarify the nature of the claim.

intentionally and not because of mistake or accident." (*Id.* at PageID 305.) Kelly's trial counsel did not object to those instructions. (*See* 02/26/2013 Trial Tr. 133-34, ECF No. 123.)

Movant's stand-alone challenge to the jury instruction is not cognizable in a § 2255 motion because the issue could have been raised on direct appeal. *See supra*. The alleged ineffectiveness of appellate counsel cannot overcome the default because the inmate cannot show deficient performance or prejudice. Kelly is correct that the jury instructions do not precisely conform to the Sixth Circuit Pattern Jury Instructions 2.10 and 2.10A and, specifically, do not state that "just being present where something is located does not equal possession." There is no requirement that a trial judge use the pattern instructions. The instruction that the possession must be "knowing" prevents a conviction "because of mistake, or accident, or innocent reason." *United States v. Williams*, 526 F.2d 1000, 1004 (6th Cir. 1975); *see also Seaton v. United States*, No. 98-6076, 1999 WL 685947, at *1 (6th Cir. Aug. 24, 1999) (denying challenge to § 922(g) conviction where jury had been instructed on the meaning of "knowingly") (citing *United States v. Odom*, 13 F.3d 949, 961 (6th Cir. 1994)).

Claim 3 is without merit and is DISMISSED.

**D.      The Sixth Amendment Challenge to the Sentence (Claim 4)**

In Claim 4, Kelly argues that his sentence violates the Sixth Amendment. (Mot. at PageID 8, ECF No. 1.) The factual basis for this claim is as follows:

> I was unlawfully enhanced and cross-referenced for unproven conduct that took my advisory guideline range beyond the statutory maximum for the offense of conviction. This is a 6th Amendment violation even though I was ultimately sentenced within the original sentence range the cross-reference is a violation of my legal rights. The Court can not convict me on possession and then sentence me for kidnapping. This cross-reference changes my custody level from medium/low to medium/high which is a part of why it violates the 6th Amendment. *See Alleyne v. United States*.

(*Id.*; *see also* Mem. of Law in Supp. of Mot. at 8-10, ECF No. 1-1.) He insists that appellate counsel rendered ineffective assistance in failing to raise the issue. (Mot. at PageID 8, ECF No. 1.)

As previously noted, in calculating the advisory guideline range, the Court applied the guideline for kidnapping, as specified in U.S.S.G. §§ 2K2.1(c) and 2X1.1(a). In so doing, the Court overruled the objection of defense counsel that the cross-reference violated the Sixth Amendment because the jury did not hear evidence that LaShawn Kelly had been kidnapped. (Sentencing Hr'g Tr. 103-10, Case No. 1:11-cr-10009, ECF No. 124.) Kelly's stand-alone challenge to his sentence is barred by procedural default because the issue could have been raised on direct appeal.

The inmate's ineffective assistance claim is also meritless. In *United States v. Henry*, 455 F. App'x 655 (6th Cir. 2012), the Sixth Circuit held that application of the kidnapping cross-reference to a defendant who had been convicted of violating § 922(g) did not violate his Sixth Amendment rights. *Henry,* 455 F. App'x at 657. The Court of Appeals reasoned that "*Apprendi* [*v. New Jersey,* 530 U.S. 466 (2000)] is not triggered so long as the judicial findings of fact do not result in the defendant *receiving* a sentence that exceeds the statutory maximum." *Id.* It also does not matter that the advisory guideline range in this case exceeded the statutory maximum because the Court did not impose a sentence in excess of that maximum. *See id.* at 657-58.

The United States Supreme Court's subsequent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), does not change that result. In *Alleyne*, the Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" that must be submitted to the jury, rather than a "sentencing factor." *Alleyne*, 133 S. Ct. at 2155-57. Applying this standard, the Court concluded that a finding that a defendant charged under 18 U.S.C. § 924(c)

"brandished" a firearm, which triggers a mandatory minimum sentence of seven years, must be submitted to the jury. *Id.* at 2163-64. As this Court found at the sentencing hearing, *Alleyne* is inapplicable because Kelly was not subject to a mandatory minimum sentence. (Sentencing Hr'g Tr. 106-10, ECF No. 124.)

Claim 4 is without merit and is DISMISSED.

### E.     Sufficiency of the Evidence (Claim 5)

In Claim 5, Movant challenges the sufficiency of the evidence. (Mem. of Law in Supp. of Mot. at 13-14, ECF No. 1-1.) Kelly challenged the sufficiency of the evidence on direct appeal. (Br. of Appellant Kelly at 23-25, *United States v. Kelly*, No. 13-6566 (6th Cir.), ECF No. 22.) The Court of Appeals rejected the claim on the merits, reasoning that "[t]he arresting officer offered the same testimony at trial as he did in the suppression hearing. The jury also viewed the video from the officer's vehicle. This was sufficient evidence to find that Kelly possessed a firearm." *United States v. Kelly*, No. 13-6566, slip op. at 3. He cannot relitigate the sufficiency of the evidence on collateral review.

Claim 5 is without merit and is DISMISSED.

### F.     The Allegedly Defective Indictment (Claim 6)

In Claim 6, the inmate contends that the indictment was defective. (Mem. of Law in Supp. of Mot. at PageID 26, ECF No. 1-1.) Specifically, he notes that

> [t]he Grand Jury indicted petitioner with two Title 18 offenses; 18 U.S.C. § 922(g) and 18 U.S.C. 924(a) & (e). Yet petitioner was only convicted of 922(g). Petitioner was never tried and convicted for the 924(a) & (e), which was clearly on the face of the indictment. The indictment clearly read that petitioner was in violation of § 922(g) and 924(a) & (e). The Supreme Court has already ruled that anything that the grand jury indicts must be proven beyond a reasonable doubt. Therefore, this is a clear violation of the Constitution and Supreme Court law. . . .

(*Id.* (emphasis omitted).)

Claim 6 is barred by procedural default because it was not raised on direct appeal. Kelly does not allege that his appellate counsel was ineffective and, therefore, he cannot overcome his default. The merits of the issue were addressed at the sentencing hearing, where the Court explained that the penalty provision for violations of § 922(g) is found at § 924(a) and (e). (Sentencing Hr'g Tr. 8-10, Case No. 1:11-cr-10009, ECF No. 124.)

Claim 6 is without merit and is DISMISSED.

### G. The Alleged Structural Error (Claim 7)

In Claim 7, the inmate submits that there was structural error in this case for four reasons. First, he complains that he was denied counsel at a critical stage because the Court denied his repeated requests to remove his trial attorney. Second, he asserts that this judge was actually biased against him. Third, he complains that the Court denied him the right to represent himself at the sentencing hearing. Fourth, Kelly reiterates his complaint about "a defective reasonable doubt instruction" that "was done because petitioner's 'possession' instruction was incomplete and misleading . . . ." (Mem. of Law in Supp. of Mot. at PageID 26 (emphasis omitted), ECF No. 1-1.)

Claim 7 is barred by procedural default because it was not presented on direct appeal as a stand-alone claim. Kelly cannot overcome that default because he has not alleged that his appellate counsel rendered ineffective assistance by failing to present the claim on direct appeal. In addition, the Court's failure to allow the inmate to represent himself at sentencing was addressed on direct appeal. *United States v. Kelly*, No. 13-6566, slip op. at 2. The Sixth Circuit held that, "[b]ecause Kelly did not clearly and unequivocally assert his right to proceed *pro se*, he cannot argue that he was denied that right." *Id.* That issue cannot be relitigated in a § 2255

motion. Finally, the Court has rejected his complaint about the jury instruction, which was presented in Claim 3.

Claim 7 is without merit and is DISMISSED.

### F. The Alleged Lack of Subject-Matter Jurisdiction (Claim 8)

In Claim 8, Movant complains there was a lack of subject-matter jurisdiction because the Government lacked standing to prosecute. (Mem. of Law in Supp. of Mot. at PageID 27, ECF No. 1-1.) Kelly asserts that "[t]his case originated in the State of Tennessee, and that should be who retained jurisdiction over this matter." (*Id.*) According to the inmate, the only person with standing to prosecute is LaShawn Kelly, a third party not before the Court. (*Id.*)

Claim 8 is meritless. Subject-matter jurisdiction refers to a court's statutory or constitutional power to adjudicate a case. *United States v. Cotton*, 535 U. S. 625, 630 (2002). Federal courts have subject-matter jurisdiction over prosecutions alleging violations of the federal criminal laws. 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.") Kelly was indicted for violating 18 U.S.C. § 922(g), a federal criminal statute. He was charged in state court with state crimes and in federal court with a federal offense.

Claim 8 is DISMISSED.

\* \* \* \*

The Motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules. The Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Movant's

16

conviction and sentence are valid and, therefore, his Motion is DENIED. Judgment shall be entered for the United States.

**IV.     APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same), however, Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

There can be no question that the issues raised in Kelly's Motion are meritless for the reasons previously stated. Because any appeal by Movant on the issues raised in his Motion does not deserve attention, the Court DENIES a COA.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*,

117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[6]

IT IS SO ORDERED this 31st day of October 2016.

                                                                                                                     s/ J. DANIEL BREEN
                                                                                                                     CHIEF UNITED STATES DISTRICT JUDGE

---

[6]If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.